**FRANK'S GMC TRUCK CENTER, INC.**

v.

**GENERAL MOTORS CORPORATION,** *Appellant.*

No. 88–5112.

United States Court of Appeals, Third Circuit.

Argued May 3, 1988.

Decided May 24, 1988.

Michael S. Waters (argued), Lois H. Goodman, Carpenter, Bennett & Morrissey, Newark, N.J., Burton L. Ansell, General Motors Corp., Detroit, Mich., for appellant.

Nicholas L. Ribis (argued), Bruce R. Volpe, James J. O'Hara, Ruth M. Meyer, Ribis, Graham, Verdon & Curtin, Morristown, N.J., for appellee.

Before GIBBONS, Chief Judge, and MANSMANN and COWEN, Circuit Judges.

OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal arises from an order of the district court, which granted a preliminary injunction in favor of Frank's GMC Truck Center ("Frank's GMC") compelling General Motors ("GM") to continue to supply heavy-duty truck parts and to process warranty claims on heavy-duty trucks filed by Frank's GMC. GM had ceased supplying heavy-duty trucks, and related parts and warranty service, to Frank's GMC as a result of its decision to withdraw from the heavy-duty truck market. Because we conclude that Frank's GMC has not been irreparably injured and because the district court failed to require the posting of a bond as mandated by Fed.R.Civ.P. 65(c), we find that the injunction was improvidently granted and will reverse.

I.

Frank's GMC has been a GM franchisee since 1937, and has sold the full line[1] of GM trucks since 1973. In October 1986, GM informed Frank's GMC that it had formed a joint venture with A.B. Volvo, known as Heavy Truck Corporation ("Volvo/GM") (in which GM was to be a minority participant) to manufacture and market heavy-duty trucks in North America. As a consequence of the joint venture, GM also advised Frank's GMC that it was no longer going to manufacture and supply them with heavy-duty trucks and parts. Nevertheless, Frank's GMC anticipated receiving heavy-duty trucks from the joint venture because of its past superior sales record with GM. However, in July of 1987 Volvo/GM informed Frank's GMC that it would not be selected to market and service these trucks on behalf of the joint venture. In addition, Frank's GMC was informed that it should cease taking orders for GM heavy-duty trucks and that orders for heavy-duty truck parts would be considered on a case-by-case basis.

After its request for reconsideration was denied by GM, Frank's GMC filed an action in the Superior Court of New Jersey and, in addition to money damages, sought injunctive relief preventing GM from discontinuing its supply of heavy-duty trucks to Frank's GMC. GM removed the action to the United States District Court for the District of New Jersey and the application for an injunction was heard on January 5, 1988.

After hearing argument and reviewing the submissions, the district court denied Frank's GMC's request for an injunction preventing GM from terminating its supply of new heavy-duty trucks, finding that it had met its burden only on the issue of likelihood of success. Nevertheless, the court granted ad interim relief in part by ordering GM to continue supplying parts and warranty administration for heavy-duty trucks to Frank's GMC pending the outcome of the litigation. The district court, while observing that it was "unclear [as to] the irreparable nature of the damage [Frank's GMC] may suffer from General Motor's refusal to continue to supply it heavy-duty parts," App. at 235, nonetheless determined that the equities demanded that GM continue to supply parts and warranty service. After the district court denied its motion for reconsideration, GM appealed to this Court.

II.

"We have consistently held that our review of the grant or denial of preliminary injunctions is limited to determining whether there has been an abuse of discretion, an error of law, or a clear mistake in the consideration of the proof." *Moteles v. University of Pennsylvania*, 730 F.2d 913, 918 (3d Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984); *see also Marxe v. Jackson*, 833 F.2d 1121, 1125 (3d Cir.1987); *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir.1987). Our scope of review is narrow because "the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, re-

---

1. GM manufactures three lines of trucks: "heavy-duty" (fully loaded gross vehicle weight ("GVW") in excess of 33,000 lbs.), "medium- duty" (GVW of between 14,000 and 33,000 lbs.), and "light-duty" (GVW less than 14,000 lbs.).

quiring a delicate balancing ... [that] is the responsibility of the district judge...." *United States Steel Corp. v. Fraternal Ass'n of Steelhaulers*, 431 F.2d 1046, 1048 (3d Cir.1970); *Marxe*, 833 F.2d at 1125.

We have recognized many times that the grant of injunctive relief is an extraordinary remedy, *United States v. City of Philadelphia*, 644 F.2d 187, 191 n. 1 (3d Cir.1980), which should be granted only in limited circumstances. To obtain this ad interim relief, a movant "must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Morton*, 822 F.2d at 367. "[W]e cannot sustain a preliminary injunction ... where either or both of these prerequisites are absent." *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir.1982); *Morton*, 822 F.2d at 367.

### A.

■ In this case, it is clear to us that there is an insufficient basis upon which a finding of irreparable injury can be made to support the district court's order compelling GM to provide parts and warranty support.[2] The assertions of Frank's GMC, even if true, do not constitute irreparable harm.[3]

■ Frank's GMC asserts that it adduced proof that its overall business will suffer from the loss of its heavy-duty truck business because a potential customer will be more reluctant to purchase medium and light-duty trucks from a dealer that does not sell or market heavy-duty trucks.

Thus, Frank's GMC claims that it has lost and will continue to lose sales because it does not sell the full line of GM trucks. Frank's GMC also avers that it presented proof that sales are related to service, and that the sale of a truck engenders a continuing service relationship. Frank's GMC alleges that the loss of its ability to perform both regular and warranty service on GM heavy-duty trucks (and to receive the substantial revenue generated therefrom), because of its difficulty in obtaining GM parts and the lack of GM warranty support, will cause irreparable damage to its on-going business.

What clearly stands out in all of Frank's GMC's arguments is that, absent the ad interim relief provided by the district court, Frank's GMC would stand to lose sales and service customers, and therefore profits. Even assuming for purposes of argument that Frank's GMC's assertions are true and that it will in fact suffer substantial lost profits as a result of GM's withdrawal from the heavy-duty truck market, the harm flowing therefrom is compensable by money damages.

The availability of adequate monetary damages belies a claim of irreparable injury. In *Morton, supra,* we noted that a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement: "Although we are not insensitive to the financial distress suffered by [the plaintiff], we do not believe that loss of income alone constitutes irreparable harm." *Morton*, 822 F.2d at 372.[4] Likewise, since Frank's GMC has failed to artic-

---

**2.** Because of our finding on this issue, we do not reach the question whether there is sufficient evidence to warrant a finding that Frank's GMC will likely prevail on the merits.

**3.** Initially, we would note that the court below expressly doubted that there was irreparable harm, but nevertheless granted injunctive relief based on equitable considerations: "Here the equities of the case rest in favor of the grant of temporary relief as to the continuation of warranty support and the continued distribution of parts and accessories necessary for service." App. at 236–37. This is an insufficient basis upon which to grant injunctive relief where the applicant has an adequate remedy at law, in this case money damages.

**4.** If anything the plaintiff's position in *Morton* was more sympathetic than Frank's GMC's in that Morton's job was his sole source of income. Here, while the heavy truck component may account for as much as 25.6% of Frank's GMC's gross profit, Frank's GMC may still rely on the other aspects of its business. Indeed, despite Frank's GMC's assertions to the contrary, the court below found that Frank's GMC's loss of this market segment does not place its continued business survival in serious jeopardy. In addition, Frank's GMC sells heavy-duty trucks produced by manufacturers other than GM, which may partially offset the void caused by the GM withdrawal.

ulate and adduce proof of actual or imminent harm which cannot otherwise be compensated by money damages, it has failed to sustain its substantial burden of showing irreparable harm. The district court, thus, erred in granting the injunction.

### B.

■■ We also recognize, however, an additional independent basis for reversal. The district court failed to require Frank's GMC, as a successful applicant, to post a bond. This failure is in direct conflict with Rule 65(c) of the Federal Rules of Civil Procedure, which mandates that a court when issuing an injunction must require the successful applicant to post adequate security.[5] Although the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary. While there are exceptions, the instances in which a bond may not be required are so rare that the requirement is almost mandatory. We have held previously that absent circumstances where there is no risk of monetary loss to the defendant, the failure of a district court to require a successful applicant to post a bond constitutes reversible error. *System Operations, Inc. v. Scientific Games Dev. Corp.*, 555 F.2d 1131, 1145–46 (3d Cir.1977).[6] Here, there was evidence in the record indicating that GM would incur substantial costs in complying with the terms of the injunction.[7] Indeed, the district court recognized that "although harm would occur to GM if the preliminary injunction was continued and not stayed or dissolved ... it is not irreparable, and pales in significance to the potential loss of Plaintiff." App. at 290. Given the clear possibility that GM could be forced to incur costs with no way to seek restitution if Frank's GMC does not prevail, it was error for the court below to deny GM's request for a bond.

### III.

We conclude that Frank's GMC did not meet its affirmative burden of showing irreparable injury. Therefore, the district court improvidently granted ad interim relief. Furthermore, the district court erred in issuing the injunction without requiring Frank's GMC to post a bond. For the foregoing reasons, we will reverse and remand with instructions to vacate the preliminary injunction.

---

5. Rule 65(c) states, in relevant part:
   (c) Security. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.
   Fed.R.Civ.P. 65(c). The reason for this requirement is simple: The party against whom an injunction is issued has no legal or equitable means to recover against the applicant for a wrongful grant of the injunction (i.e., where the applicant does not prevail in the main action), other than the bond.

6. Because we reverse the district court's order granting an injunction based on the absence of irreparable injury and the failure to require the posting of security, we need not reach GM's other arguments.

7. The record reflects that if Frank's GMC does not prevail GM will have been damaged: (1) by any difference in the amount it will receive from Frank's GMC as payment for the parts it must provide to Frank's GMC and the amount it pays to obtain these parts; and (2) by the amount it will expend to set up and administer a warranty service program, as well as the claims it will have to pay to Frank's GMC for doing the work (because Volvo/GM agreed to assume responsibility for warranty service).
   Frank's GMC argues that any damages incurred by GM are purely of its own making because GM has made the choice to dismantle its warranty support and sell off or transfer its parts inventory. However, this argument is spurious as GM would incur costs in complying with the injunction whether it phased parts and warranty services out and had to reconstitute them, or whether GM itself continued to maintain them.