**ACS ENTERPRISES, INC., et al.**

v.

**COMCAST CABLEVISION OF PHILADELPHIA, L.P., and Comcast Corporation.**

Civ. A. No. 93–2076.

United States District Court, E.D. Pennsylvania.

July 14, 1994.

Michael K. Atkinson, Deborah C. Costlow, Thomas C. Power, Winston & Strawn, Washington, DC, James A. Young, Marc L. Bogutz, Christie, Pabarue, Mortensen and Young, Philadelphia, PA, for plaintiffs ACS Enterprises, Inc., Ashton Apartments, L.P., Yu S. Yeh, Dr., Chris J. Gigliotti, William A.

Meehan, Frank J. Montemuro, Jr. d/b/a Brookshire Trace, Chestnut Hills Associates, L.P., Winthrop Financial Associates, a Ltd. Partnership, David A. Goldstein, Park Drive Manor, L.P., PDM Realty Associates, L.P.

James A. Young, Christie, Pabarue, Mortensen and Young, Philadelphia, PA, for plaintiffs Andover Associates, Robert Rodin.

M. Norman Goldberger, Michael K. Coran, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, PA, for defendants Comcast Cablevision of Philadelphia, L.P., Comcast Corp.

## MEMORANDUM

DUBOIS, District Judge.

This case arises out of the efforts by defendants to exercise their rights under the Tenants' Rights to Cable Television Act, Pa.Stat. Ann. tit. 68, § 250.501–B *et seq.* (1993 Supp.) ("the Act"), to install cable television ("CATV") service in apartment buildings owned by all plaintiffs other than ACS Enterprises, Inc. Plaintiffs contend in their Amended Complaint[1] that the Act is unconstitutional under the Constitutions of the United States and the Commonwealth of Pennsylvania and seek declaratory and injunctive relief preventing defendants from proceeding under the Act.

Currently before the Court is plaintiffs' Reinstated Motion for Preliminary Injunction. Upon consideration of plaintiffs' Motion, the submissions of the parties, the arguments presented at the hearing on the Motion held on June 2, 1994, for the following reasons, plaintiffs' Reinstated Motion for Preliminary Injunction will be denied.

## I. THE PARTIES

Plaintiffs in this action are ACS Enterprises, Inc. ("ACS"), a multi-channel television programming distributer, and several apartment building owners: (1) Ashton Apartments, L.P. and Dr. Yuh S. Yeh, the general partner of Ashton Apartments; (2) Chris J. Gigliotti, William A. Meehan, and Frank J. Montemuro, Jr., partners doing business as

1. The Amended Complaint, filed on May 25, 1993, added several parties as plaintiffs, but was otherwise identical in all material respects to the original Complaint.

Brookshire Trace; (3) Chestnut Hill Associates, L.P. and Winthrop Financial Associates, a public limited partnership that is the general partner of Chestnut Hill Associates; (4) David A. Goldstein, owner of Cliveden Hall Apartments; (5) Park Drive Manor, L.P. and PDM Realty Associates, L.P., the general partner of Park Drive Manor; and (6) Andover Associates and Robert Rodin, the general partner of Andover Associates (collectively the "Property Owners").

Defendants are Comcast Cablevision of Philadelphia, L.P., a cable television operator franchised by the City of Philadelphia, and Comcast Corporation, which plaintiff alleges is a general partner of Comcast Cablevision (collectively "Comcast" or "defendants"). Comcast Cablevision's Vice President, however, states that Comcast Cablevision of Philadelphia, Inc., and not Comcast Corporation, is the general partner of Comcast Cablevision of Philadelphia, L.P.

## II. TENANTS' RIGHT TO CABLE TELEVISION ACT—A SUMMARY

The Act permits a cable television franchisee, upon a request from a tenant in a multi-unit apartment building, to "take" an easement or right-of-way in the building large enough to wire the entire building for cable television service. If a tenant of an apartment building requests CATV services, and the CATV operator decides to provide service, the operator must provide the landlord with notice of its intention to invoke the Act. The operator must also submit a written proposal to the landlord "outlining the nature of the work to be performed and including an offer of compensation for loss in value of property given in exchange for the permanent installation of CATV facilities." *Id.* § 250.504–B. Additionally, the proposal must include a statement from the operator that it is liable to the landlord for any physical damage; set forth the means by which the reasonable installation requirements of the landlord are to be met; and state the time period for installation and the security to be provided. *Id.*

The Act provides for a forty-five day negotiation period during which the landlord and operator are to negotiate an agreement for the installation of CATV service. *Id.* At any time prior to the expiration of the forty-five day period, the landlord may give the operator written notice that it requires greater compensation or believes that the terms of the work to be performed are unacceptable. *Id.* § 250.506–B(b)(1). At the end of the forty-five day period, if no agreement has been reached, the operator must notify the landlord of the terms that the operator finds to be unreasonable and must accompany this notification with a request for arbitration. *Id.* § 250.506–B(b)(2). Arbitration proceedings pursuant to the Act must be conducted in accordance with the rules of the American Arbitration Association and the arbitrators must apply the requirements of the Act "relating to time, presumptions and compensation for loss of value." *Id.* § 250.506–B(b)(3). Either party may appeal the arbitration award to a Pennsylvania Court of Common Pleas, but only with respect to the amount of compensation for loss of value or damage to property. *Id.* § 250.506–B(b)(4). A CATV operator may enforce the right to install service pursuant to the conditions of the Act by bringing a civil action in state court. *Id.* § 250.504–B.

## III. PROCEDURAL BACKGROUND

### A. *Defendants' Motion to Dismiss/Abstain*

In their Amended Complaint, plaintiffs asked the Court to enjoin defendants' invocation of the Act under a variety of federal and state constitutional provisions. On April 4, 1993, by Motion for Preliminary Injunction, plaintiffs moved for an immediate injunction enjoining the defendants from invoking the provisions of the Act under a more limited number of federal and state constitutional provisions. On May 6, 1993, the parties entered into an agreement whereby defendants agreed not to invoke the Act's provisions against the property owners until five days after the date that the Court ruled on plaintiffs' Motion for Preliminary Injunction.

On June 4, 1993, defendants filed a Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). Subsequently,

plaintiffs and defendants agreed to combine the preliminary injunction hearing with the hearing on the merits.

The Court thereafter proceeded to address defendants' Motion to Dismiss. One of the constitutional provisions under which plaintiffs request relief is Article II, Sec. 1 of the Pennsylvania Constitution, which limits delegations of legislative power. In their Motion to Dismiss, defendants argued, *inter alia,* that because Pennsylvania law provides no clear answer to plaintiffs' claims regarding unlawful delegation of power under the state constitution and, because that question underlies the federal constitutional claims at issue in the case, the Court should abstain from exercising jurisdiction under the abstention doctrine of *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

On May 12, 1994, the Court issued a Memorandum and Order in which it abstained under the *Pullman* abstention doctrine and stayed the case pending a determination by the Pennsylvania state courts of the unlawful delegation of power issue under the Pennsylvania Constitution. The Order denied without prejudice plaintiffs' Motion for Preliminary Injunction and defendants' Motion to Dismiss. In the Memorandum, the Court stated that, in the event the Memorandum and Order resulted in the termination of defendants' agreement to maintain the status quo, plaintiffs would be permitted to renew their Motion for Preliminary Injunction in this Court, under *New Jersey—Philadelphia Presbytery of the Bible Presbyterian Church v. New Jersey State Bd. of Higher Educ.,* 654 F.2d 868, 886–87 (3d Cir.1981) and *Chez Sez III Corp. v. Township of Union,* 945 F.2d 628, 634 n. 4 (3rd Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992).[2]

### B. *Plaintiffs' Reinstated Motion for Preliminary Injunction*

On May 17, 1994, after receipt of the Court's Memorandum and Order, defendants informed plaintiffs that they no longer considered themselves bound by their earlier agreement to maintain the status quo and intended to pursue their rights under the Act. On May 18, 1994, during a telephone status conference with the Court, plaintiffs made an oral application to reinstate their Motion for Preliminary Injunction. The Court granted the oral application by Order dated May 24, 1994. The parties agreed to proceed with the Reinstated Motion based on the briefs and affidavits that had been submitted in connection with the original motion. In addition, with leave of Court, additional affidavits were submitted by the parties. Argument on the Reinstated Motion was held on June 2, 1994.

Plaintiffs' Reinstated Motion for Preliminary Injunction is based on the following grounds: (1) the delegation of power to private cable franchisees to take property is an unlawful delegation under the delegation doctrine implicit in Article II, Sec. 1 of the Pennsylvania Constitution; (2) the Act precludes judicial determinations of the validity and scope of particular takings under the Act in violation of plaintiffs' right to seek such determinations under the federal and state constitutions; (3) the Act permits takings for a private, not a public, purpose, in violation the federal and state constitutions; and (4) the Act does not provide for full compensation for takings because it does not allow consideration of the loss in value caused by the elimination of exclusive contracts and because it forces property owners to pay half of the costs of arbitration in violation of federal and state constitutional protection against takings without just compensation.

## IV. FINDINGS OF FACT

Defendant Comcast has been awarded a franchise by the City of Philadelphia to install, maintain, and operate CATV facilities through the public streets and rights-of-way in a portion of the city. Comcast seeks access to the property owners' apartment

---

**2.** The Court also noted that, under *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), plaintiffs were permitted to reserve their right to have only the state law issue resolved by the state courts, and to return to this court for a determination of their federal claims if such adjudication was necessary after the state court determination of the state law delegation of power issue.

buildings to install CATV services pursuant to the Act.

Plaintiff ACS operates a combination of satellite receiving antennas and microwave frequencies licensed by the Federal Communications Commission to deliver to its customers multiple channels of television programming known as satellite master antenna television programming ("SMATV"). Unlike a cable television company, which provides channels through a wire that passes through public rights-of-way, ACS's microwave transmission and reception facilities are located wholly on private property, and therefore ACS is not required to obtain a municipal or county franchise in order to operate.

The property owner plaintiffs have entered into exclusive contracts with ACS to provide their apartment residents with multi-channel television services on a subscription basis, and they receive a percentage of ACS' revenue from subscribers. Through this action, ACS and the property owners seek to protect their contractual arrangement against interference from defendants' installation of CATV services.

ACS and Comcast generally compete against one another to obtain subscribers in the Philadelphia area and compete specifically with respect to gaining access rights to apartment buildings such as those owned by the plaintiff property owners. There are 2,063 units in the apartment buildings owned by the plaintiff property owners in which Comcast seeks to install service.

Both ACS and Comcast offer a broad array of programming services to their subscribers, including local commercial and public broadcast stations, broadcast "superstations" such as WTBS, satellite channels such as CNN and MTV, and "premium" channels such as HBO. In addition, because CATV is regulated by the federal government, Comcast is required to dedicate a certain number of channels for educational, governmental, public, and minority-owned commercial programming. Comcast therefore offers many "specialized" channels that ACS does not offer, and provides many more channels overall than does ACS.

Comcast's installation of cable in the Property Owners' buildings would intrude upon the properties in the following manner: (1) A one-half inch cable line would be laid underground, if possible, connecting the nearest available Comcast junction outside of the building to another location immediately outside of the building, and any ground disturbance would be restored with sod or grass seed. If the line must be connected aerially, it would be installed within existing utility easements; (2) a small junction box would be placed in a closet, hallway or basement inside the building; (3) a three-eighths inch cable wire would connect the junction box with one cable wall outlet in each apartment unit; (4) the internal cable wires would be placed in accordance with the wishes of the property owner, and could be run above drop ceilings or covered by molding to make them unnoticeable.

## V.  CONCLUSIONS OF LAW AND DISCUSSION

■  Preliminary injunctive relief is an extraordinary remedy that preserves the status quo until a trial on the merits may be held and should be granted only in limited circumstances. *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir.1988). When considering whether to grant a preliminary injunction, the Court must consider the following factors: "(1) the probability of irreparable injury to the moving party in the absence of relief; (2) the possibility of harm to the nonmoving party if relief were granted; (3) the likelihood of success on the merits; and (4) the public interest." *Alessi v. Pennsylvania Dep't of Public Welfare*, 893 F.2d 1444, 1447 (3d Cir. 1990).

■  Based on the Court's findings of fact, the Court concludes that plaintiffs will not be irreparably harmed if defendants are permitted to proceed under the Act. The Court therefore will not consider the likelihood of plaintiffs' success on the merits of the case or the other prerequisites for obtaining a preliminary injunction, and will deny plaintiffs' Motion. *See Hohe v. Casey*, 868 F.2d 69, 72 (3rd Cir.1989), *cert. denied*, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989).

■ In order to satisfy the irreparable harm element, "plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir.1989). If monetary damages are not difficult to obtain and are otherwise adequate, plaintiff has not shown irreparable harm. *Hohe*, 868 F.2d at 73.

At the argument on the preliminary injunction, plaintiffs conceded that monetary damages could adequately compensate the property owner plaintiffs for any tangible damage or loss of value to the properties resulting from the taking if the Act was subsequently found to be unconstitutional. The Court concludes, based on its findings regarding the limited degree to which defendants would physically intrude upon the property owner plaintiffs' properties, that damages caused by such intrusion could be easily measured.

Plaintiffs argue, however, that the property owner plaintiffs' constitutional right to exclude others from their properties is of such importance that monetary damages are *per se* inadequate and therefore irreparable harm must be found.

Some courts have held, in the context of certain constitutional injuries, that no harm other than the constitutional violation itself need be shown in order to demonstrate irreparable harm for the purpose of a preliminary injunction. The seminal case in this regard is *Elrod v. Burns*, 427 U.S. 347, 373–74, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1976). In *Burns*, employees of the Cook County, Illinois, sheriff's office alleged that threats to discharge them based on their political views violated their First Amendment rights. The Supreme Court upheld the decision of the Court of Appeals, which granted a preliminary injunction to protect the employees' First Amendment rights, specifically stating that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 373, 96 S.Ct. at 2689.[3]

The Third Circuit has held, however, in the First Amendment context, that "[c]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *Hohe*, 868 F.2d at 73. The court in *Hohe* held that the possibility that the deduction of "fair share" fees from non-union members' paychecks to support union activities violated the First Amendment failed "to rise to that level of constitutional deprivation sufficient to show the irreparable harm necessary for the issuance of a preliminary injunction." *Id.* The court reasoned that monetary damages were an adequate and ascertainable remedy in the event plaintiffs succeeded on the merits of their claim. *Id.*

The Court has found no case stating that a taking of property in violation of either the Fifth Amendment or the Pennsylvania Constitution constitutes *per se* irreparable harm. In the cases in which preliminary injunctions have been granted in the context of challenges to proposed takings of property, findings of irreparable harm have been based on a variety of determinations of specific irreparable harm, but never on the proposition that a taking of property causes irreparable injury *per se*.

For example, in *Railway Labor Executives' Assoc. v. Gibbons*, 448 U.S. 1301, 1304, 100 S.Ct. 2668, 2671, 65 L.Ed.2d 1094 (1980), Justice Stevens, in his capacity as Circuit Justice, denied a motion to stay the issuance

---

3. *See also Marks v. Stinson*, 19 F.3d 873, 878–879 (3d Cir.1994) (irreparable injury where, absent injunctive relief, a state representative who likely had been improperly seated would exercise the power of the representative's office); *Covino v. Patrissi*, 967 F.2d 73, 77 (2nd Cir.1992) (irreparable injury caused by violation of Fourth Amendment right to be free from unreasonable searches); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2nd Cir.1984) (irreparable injury would arise from transfer of inmate to overcrowded prison where plaintiff would possibly be deprived of Eighth Amendment rights); *Doe v. Mundy*, 514 F.2d 1179, 1183 (7th Cir.1975) (irreparable injury to fundamental privacy right caused by county hospital's refusal to admit patients for the performance of elective abortion). *See also*, 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2948, at 440 (1973) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary").

of a preliminary injunction barring payments from the estate of a bankrupt railroad to railroad employees based on a finding that such payments would be unrecoverable in the event the payments were found to be an unconstitutional taking.

In *United Church of the Medical Ctr. v. Medical Center Comm'n,* 689 F.2d 693, 701 (7th Cir.1982), the Seventh Circuit held that the district court abused its discretion in denying injunctive relief where a church whose property was going to be taken would have had to relocate building sites, reasoning that a given piece of property is always "unique" and its loss, even if accompanied by replacement by a different property, always causes irreparable injury. *See also Carteret Savings Bank v. Office of Thrift Supervision,* 762 F.Supp. 1159 (D.N.J.1991) (injuries to reputation and limitations that would be placed on power to make business decisions that would be caused by allegedly unlawful taking constituted irreparable injuries), *vacated on other grounds,* 963 F.2d 567 (3d Cir.1992).

In addition, none of the cases cited by plaintiffs in support of their argument that the potential violation of their constitutional rights is *per se* irreparable harm compels such a finding here. In *Susquehanna Valley Alliance v. Three Mile Island Nuclear Reactor,* 619 F.2d 231, 245 (3d Cir.1980), *cert. denied,* 449 U.S. 1096, 101 S.Ct. 893, 66 L.Ed.2d 824 (1981), the Third Circuit held that an allegation of deprivation of constitutional "life and liberty" rights was a sufficient allegation of irreparable harm such that plaintiffs were not required to exhaust their administrative remedies before proceeding in district court. In *Lewis v. Kugler,* 446 F.2d 1343, 1350 (3d Cir.1971), the Court of Appeals held that monetary damages do not adequately compensate unconstitutional searches and seizures and therefore equitable relief was available if such a violation was found. In *Hairston v. Hutzler,* 468 F.2d 621 (3d Cir.1972), the Third Circuit affirmed a district court holding that injunctive relief was available to remedy unconstitutional police practices. At most, these cases support the view that the violation of certain constitutional rights may be deemed irreparable *per*

*se.* They say nothing, however, regarding the compensability of a violation of property rights.

■ Although the power to exclude is an important feature of an individual's property rights, *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 435, 102 S.Ct. 3164, 3175, 73 L.Ed.2d 868 (1982), courts have accepted monetary damages as an adequate measure of the loss suffered when property is validly taken pursuant to the eminent domain power of the State. *See* R. Epstein, *Takings,* 182–86 (1985) (concept of placing the property owner "in as good a position pecuniarily as if his property had not been taken" guides determinations of just compensation under the takings clause) (quoting *Olson v. United States,* 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934)).

In the instant case, the traditional mechanism for determining compensation for a taking of property would be available to determine the property owner plaintiffs' loss, should plaintiffs prevail on the merits of their claim. If a constitutional violation is found, damages could be paid to the property owner plaintiffs as compensation for the time their properties were wired by Comcast. In addition, if the takings are determined to be invalid, equitable relief would be available to force defendants to remove the wiring they had installed and legal relief would be available to restore the properties to their original condition and compensate for any loss in value. Defendants have demonstrated that the takings will cause only a limited intrusion into the property owners' buildings and plaintiffs have presented no evidence that they cannot be fully compensated in this manner.

Therefore, the Court finds that monetary damages, in conjunction with an injunction requiring Comcast to remove the wiring it will install in the property owners' buildings, would adequately compensate the property owners if the takings were deemed invalid.

■ Finally, the Court notes that plaintiffs have not pointed, either in their moving papers, their proposed findings of fact and conclusions of law, or at oral argument, to any specific irreparable harm that ACS would suffer in the absence of a preliminary injunc-

**1112**

tion. To the extent that ACS might suffer loss of customers or loss of good will if the injunction were not granted, the Court finds that such injuries, if suffered as the result of a violation of ACS' rights, could be compensated through money damages. *See American Cablecom Limited Partnership v. Cablevision,* 1993 WL 313362, at *2–3, 1993 U.S.Dist. LEXIS 11981, at *7 (E.D.Pa. Aug. 5, 1993).

## VI. CONCLUSION

Plaintiffs have failed to establish that they will suffer irreparable harm if defendants take a limited portion of their property for the purpose of installing cable television services. Accordingly the Court will not issue a preliminary injunction enjoining defendants from proceeding with their rights under the Act.

An appropriate Order follows.

### ORDER

**AND NOW,** to wit, this 14th day of July, 1994, upon consideration of plaintiffs' oral application for reinstatement of their Motion for Preliminary Injunction made on May 18, 1994, this Court's May 25, 1994, Order granting plaintiffs' oral application for reinstatement of their Motion for Preliminary Injunction, the Motion of Plaintiffs, ACS Enterprises, Inc., et al., for Preliminary Injunction and Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion and accompanying affidavits (Document No. 6), Plaintiffs' Supplemental Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction (Document No. 12), the Declaration of Tyrone Conner (Document No. 15), Defendants' Answer to Plaintiffs' Motion for Preliminary Injunction and Consolidated Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction and in Support of Defendants' Motion to Dismiss (Document No. 16), Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss and in Support of Plaintiffs' Motion for Preliminary Injunction (Document No. 22), the Affidavit of Dr. Alan Pearce (Document No. 23), Plaintiffs' Supplemental Brief (Document No. 24), Defendants' Surreply Memorandum (Document No. 25), Defendants' Supplement to Surreply Memorandum by letter dated July 30, 1993 (Document No. 27), Plaintiffs' Response to Defendants' Supplement to Surreply Memorandum by letter dated August 9, 1993 (Document No. 28), Defendants' Supplemental Memorandum (Document No. 32), Plaintiffs' Response to Defendants' Supplemental Memorandum (Document No. 34), Defendants' Motion for Leave to File Additional Submission (Document No. 35), Defendants' Second Supplemental Memorandum (Document No. 37), the Affidavit of Dr. George Schink (Document No. 43), the Affidavit of Debra Thacker (Document No. 43), Plaintiffs' Requested Findings of Fact and Conclusions of Law (Document No. 45), the Affidavit of Charles Mallon (Document No. 47), Defendants' Proposed Findings of Fact and Conclusions of Law (Document No. 49), the Affidavit of Randolph J. Cicatello (Document No. 50), Plaintiffs' Alternative Proposed Conclusions of Law (Document No. 51), the Supplemental Affidavit of Debra Thacker (Document No. 52), and the argument on the Reinstated Motion for Preliminary Injunction held on June 2, 1994, for the reasons set forth in the accompanying Memorandum, IT IS ORDERED that plaintiffs' Reinstated Motion for Preliminary Injunction is DENIED.