

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-8-2005

# Liveware Publ Inc v. Best Software Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1788

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

## Recommended Citation

"Liveware Publ Inc v. Best Software Inc" (2005). *2005 Decisions.* Paper 1466.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1466

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 04-1788 and 04-2028

LIVEWARE PUBLISHING INC,
v.
BEST SOFTWARE INC;
(District of Delaware Civil Action No. 02-cv-00206)

BEST SOFTWARE INC
v.
DANIEL LEVIN
(District of Delaware Civil Action No. 02-cv-00356)

Liveware Publishing Inc
and Daniel Levin,
Appellants

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Nos. 02-cv-00206 and 02-cv-00356)
District Judge:  Honorable Kent Jordan

Submitted Under Third Circuit LAR 34.1(a)
January 25, 2005

Before:  SCIRICA, Chief Judge, RENDELL and FISHER, Circuit Judges.

(Filed:   March 8, 2005)

OPINION OF THE COURT

RENDELL, <u>Circuit Judge</u>

Liveware Publishing, Inc. seeks reversal of a preliminary injunction entered by the District Court on September 25, 2003. Liveware contends that: (1) the District Court erred in issuing the preliminary injunction where there was no showing of immediate irreparable injury to Best Software Inc.; (2) the District Court erred in entering the preliminary injunction without requiring a bond; (3) the injunction is an overbroad prior restraint on speech; and (4) the District Court erred in granting Best's request for a preliminary injunction because Best itself had "unclean hands." Our jurisdiction over the granting of an injunction is based on 28 U.S.C. § 1292(a). We will affirm.

I.

As we write solely for the parties, and the facts are known to them, we will discuss only those facts pertinent to this appeal. Liveware is a Delaware corporation that owns and licenses a software program called R&R Report Writer. In 2001, Liveware and Best entered into a licensing agreement which permitted Best to incorporate R&R into its software product, Abra Suite. In 2002, Liveware filed suit against Best in the U.S. District Court for the District of Delaware (hereinafter "the Delaware litigation"), alleging contractual claims for violations of their licensing agreement and copyright infringement claims. Pursuant to an arbitration provision in the licensing agreement, however, Liveware's contractual claims were submitted for arbitration in April 2002.

At several points during the arbitration and litigation the District Court issued

2

warnings to Liveware about threatening Best's business partners and end-users using Abra Suite with copyright infringement litigation. District Court Judge McKelvie, who was earlier assigned to the case, stated in an April 2002 order in reference to Liveware's contacting Best's end-users and business partners, "I don't think it is a good idea to get the customers in the middle of it. I am not sure what legitimate business reason it serves other than to punish a defendant and put them at risk." The Court further stated, "I am prepared to, if your client doesn't voluntarily back away from the marketplace . . . I am prepared to enter an order directing [Liveware] to back away from it." (App. at 6A-1154.)

Despite these warnings, on July 31, 2002, Liveware sued one of Best's business partners, Human Resources Management Group ("HRMG"), in the U.S. District Court for the Eastern District of Pennsylvania (hereinafter "the Pennsylvania litigation") for direct and contributory copyright infringement. In November 2002, Liveware and HRMG reached a stipulation of settlement, but by May 2003, Liveware had successfully moved to have the settlement vacated and the Pennsylvania litigation reinstated. In the meantime, on March 21, 2003, District Court Judge Jordan, who was assigned to the Delaware litigation after Judge McKelvie retired, issued an order staying the Delaware litigation pending the results of the arbitration of the contract claims. On July 11, 2003, District Court Judge DuBois followed suit and stayed the Pennsylvania litigation pending the outcome of the arbitration.

3

In light of the resumption of the Pennsylvania litigation and the issuance of threatening e-mails to other business partners, Best moved for sanctions for violating the District Court's prior order and a preliminary injunction prohibiting Liveware and its president, Daniel Levin, from continuing to threaten Best's business partners and end-users. Specifically, Liveware's conduct included an email to Perryman & Associates, a Best business partner, stating that Perryman's failure to cooperate with Liveware would result in the "eventual loss of [its] business," "utter chaos," and "just lawyers, injunctions, [and] discovery requests." (App. at 6A-1261.)

After a hearing on the motion on August 8, 2003, the District Court found, inter alia, that Liveware's "efforts to rattle the chain of the business end users [we]re an effort to upset the status quo and to disturb the orderly resolution of the dispute" (app. at 3A-523) and that despite being warned three times by the Court to leave third parties out of the dispute until the underlying issues were resolved, Liveware had sent an e-mail threatening litigation to at least one of Best's business partners and continued with the Pennsylvania litigation at the potential risk of future sanctions for duplicative litigation. Consequently, the District Court entered an injunction on September 25, 2003 which forbade Liveware and its president from communicating in any way, "oral or written, including any direct contact or communication through email, letter, or otherwise, or any indirect contact or communication through intermediaries, print media, or electronic media," with Best's business partners and Abra Suite users "regarding the status or

4

subject matter of this litigation, the [Pennsylvania] litigation, and/or the arbitration." (App. 1A-26, 27.)

After the arbitration concluded in terms largely favorable to Liveware, Liveware filed a motion to reconsider the injunction. On February 27, 2004, the District Court granted the motion with the direction that it "was open to reconsidering whether and what kind of injunctive relief for Best is appropriate to still keep the parties from . . . disrupting the final resolution of the case here." (App. at 4A-625, 1A-31.) Despite the District Court's instructions, Liveware shortly thereafter issued a press release and a web-posting that "flagrantly violated the terms of the injunction." (App. at 1A-31.) The press release announced, "Liveware Awarded $1.3M in Arbitration Against Best Software!!," described Liveware as being "vindicated," accused Best of having lied to customers to avoid the consequences of its breach of contract with Liveware, and detailed the Pennsylvania litigation. The website announcement also encouraged Abra Suite users to file a class action lawsuit against Best.

In a March 17, 2004 Memorandum Order, the District Court granted Best's request for sanctions against Liveware for violating the terms of the injunction, stating that Liveware's conduct "fit a sorry pattern of behavior in this case." (App. at 1A-33.) In addition, the Court reconsidered the injunction and concluded that it should stand, stating that "[g]iven the continuing lack of finality of the Arbitration award and indications that Liveware will seek to continue this case regardless of the award, and given Liveware's

5

demonstrated penchant for seeking unfair advantage by pushing the litigation process out of ordinary and orderly bounds, I am persuaded that no modification of the Injunction is warranted." (App. at 1A-36.)

Liveware now appeals the District Court's issuance of the September 25, 2003 injunction, arguing that there was no showing of "immediate irreparable injury" to Best, that the injunction should not have been entered without a bond, that the injunction was an overbroad prior restraint of Liveware's speech in violation of the First Amendment, and that Best's own "unclean hands" should have precluded it from obtaining injunctive relief.

## II.

Before issuing a preliminary injunction, the District Court must consider whether the plaintiff has demonstrated (1) that he is reasonably likely to prevail eventually in the litigation and (2) that he is likely to suffer irreparable injury without relief. If these two threshold showings are made, the District Court considers, to the extent relevant, (3) whether an injunction would harm the defendant more than denying relief would harm the plaintiff and (4) whether granting relief would serve the public interest. Tenafly Eruv Ass'n v. Borough of Tenafly, 309 F.3d 144, 157 (3d Cir. 2002). We review the issuance of a preliminary injunction, including the weighing of factors in that determination, for abuse of discretion; we review factual determinations for clear error and legal conclusions are reviewed de novo. Acierno v. New Castle County, 40 F.3d 645, 652 (3d Cir. 1994).

6

"Our scope of review is narrow because 'the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring delicate balancing . . . [such that] it is the responsibility of the district judge . . . .'" Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 101-02 (3d Cir. 1988) (citing United States Steel Corp. v. Fraternal Ass'n of Steelhaulers, 431 F.2d 1046, 1048 (3d Cir. 1970)).

Liveware challenges only the District Court's finding of irreparable injury. Liveware contends that the District Court erred in finding irreparable injury for three reasons: (1) there was no irreparable injury as a matter of law; (2) as a matter of fact, Liveware did not threaten to sue any Abra Suite end-user; and (3) the District Court had already found that Best would not be irreparably injured by Liveware's contacting of its business partners and end-users.

Liveware maintains that there was no irreparable injury as a matter of law because any injury Best sustained would be compensable by an award of monetary damages. Although "the availability of adequate monetary damages belies a claim of irreparable injury," Frank's, 847 F.2d at 102, the District Court found that without injunctive relief, both Best and the Court would sustain injury for which monetary damages would not be adequate. Having noted Liveware's course of behavior throughout the litigation, the Court stated, "If I enter the injunction that's being asked for, it's an injunction that requires you to abide by the prior orders of this Court and to abide by the rules that are enacted in government litigation for the fair administration of justice." (App. at 3A-485.)

7

The Court also found that Liveware's actions caused irreparable harm to Best's business relationships with its business partners and end-users and "rattl[ed] the chain of business end-users [in] an effort to upset the status quo and to disturb the orderly resolution of the dispute," despite repeated warnings by the Court. (App. at 3A-523.) Based on these determinations, we believe that the District Court did not err in concluding that Liveware's actions would cause immediate irreparable injury both to Best and to the administration of justice if injunctive relief were not granted.

Liveware contends that the District Court erred in finding irreparable injury because, as a matter of fact, Liveware did not threaten to sue any Abra Suite end-user. First, indulging in the assertion that the distinction between threatening a business partner versus an end-user is even relevant to the evaluation of irreparable injury, it is not clear that the business partners that Liveware threatened were not also end-users of the Abra Suite product. Second, Liveware's communications via press releases and postings on its website, both before and after the issuance of the injunction, were directed at the public at large, including Abra Suite end-users. Third, and more important, the District Court's finding that Liveware sought to "rattle the chain of business end-users [in] an effort to upset the status quo and to disturb the orderly resolution of the dispute" (app. at 3A-523) indicates that the District Court appreciated threatening business partners would no doubt have an effect on end-users of the product. Given our interpretation of this finding, it is not, as Liveware suggests, clear error. Last, and most important, given that the Court

8

instructed Liveware several times to leave both end-users <u>and</u> business partners out of the dispute, the business partner/end-user distinction is irrelevant; the fact remains that Liveware threatened litigation against Perryman & Associates, a Best business partner, at least once, and <u>did</u> file a suit against HRMG. This conduct is alone a sufficient basis for finding irreparable injury to both Best and the orderly administration of the proceedings.

Finally, Liveware argues that the District Court, specifically Judge McKelvie, had already made a finding that Best would not be irreparably injured by Liveware's contacting its business partners and end-users. However, Judge McKelvie's April 5, 2002 Order denying Best's request for a preliminary injunction was made at an early stage of the litigation, well before Liveware engaged in communications with Best's business partners and end-users that the District Court later described as "pushing the litigation process out of ordinary and orderly bounds." (App. at 1A-36.) Furthermore, Judge McKelvie himself warned, "I am prepared to, if your client doesn't voluntarily back away from the marketplace . . . I am prepared to enter an order directing [it] to back away from it." (App. at 6A-1154.) In the March 17, 2004 Memorandum Order, the District Court stated that Liveware had been "warned and re-warned, from the earliest stages of the case, not to derail or improperly complicate the litigation process by threatening third parties and stirring up claims of tortious interference with contract." (App. at 1A-34.)

Accordingly, we conclude that the District Court did not abuse its discretion in issuing the injunction.

III.

Liveware maintains that the District Court's injunction is an overbroad prior restraint on its speech in violation of the First Amendment. First, the District Court's injunction was not a prior restraint on speech. The injunction was issued to prohibit Liveware's continued failure to heed the Court's instruction to leave third parties out of the dispute until the underlying issues were resolved, and the District Court found it was necessary to stop Liveware from "disrupting the proper and orderly resolution of [the] case." (App. at 1A-30.) In this sense, the injunction was reactive, not a proactive blanket prohibition of speech. Northeast Women's Ctr., Inc. v. McMonagle, 939 F.2d 57, 63 (3d Cir. 1991) ("A prior restraint is a content-based restriction on speech prior to its occurrence.").

Second, as to the scope of the injunction, we find that the District Court took pains to ensure that the injunction was not overbroad. The restriction on Liveware's communications with Best's business partners and end-users was expressly limited to "the status or subject matter" of the Delaware litigation, the Pennsylvania litigation, and the arbitration proceedings. The District Court expressly stated that it was not "ordering [Liveware] to have no contact with end-users." (App. at 3A-524.) The Court went on to explain the terms of the injunction by stating: "[I]t is not impermissible for you to have a fair and open campaign to persuade people that it's in their interest to use R&R Writer as opposed to moving to something else or doing something different. The Court has never

10

said or even implied that you need to dummy up in the market place.  What the Court has told you repeatedly is you cannot use this litigation and characterizations of this litigation and snippets of quotes from judges or from documents filed in this litigation as a club to hold over people's heads in effect, not in effect, in reality, saying to them you're next." (App. at 3A-524-25.)  Accordingly, we conclude that the injunction was no more expansive than was necessary to safeguard the proper and orderly administration of justice.

IV.

Liveware argues that the District Court erred in granting the preliminary injunction without a bond.  The decision to enter a preliminary injunction without a bond involves a conclusion of law that we review de novo.  Frank's, 847 F.2d at 101-02.

We have stated that the posting of a bond is a requirement prior to the entering of an injunction unless there is no risk of monetary loss to the party subject to the injunction. Id. at 103.  We agree with the District Court's conclusion that a bond was not required because the injunction which compelled Liveware to comply with the Court's prior orders and enjoined Liveware from discussing its litigation and arbitration with Best's business partners and end-users did not subject Liveware to compensable monetary losses.  Insofar as the injunction was necessary to enforce the Court's own orders, the Court did not err in

11

waiving the bond requirement.[1]

V.

Lastly, Liveware argues that the District Court erred in entering the preliminary injunction because Best itself had "unclean hands." As the District Court noted, no conduct on the part of Best could excuse Liveware from compliance with the Court's prior orders. We find that the District Court did not abuse its discretion in rejecting Liveware's "unclean hands" defense.

VI.

For the foregoing reasons, we AFFIRM.

---

[1] We also agree that "[g]iven the continuing lack of finality of the Arbitration award and indications that Liveware will seek to continue this case regardless of the award, and given Liveware's demonstrated penchant for seeking unfair advantage by pushing the litigation process out of ordinary and orderly bounds" (app. at 1A-36), any conceivable monetary loss Liveware may sustain as a result of the injunction is properly borne solely by Liveware as the natural and foreseeable consequence of Liveware's repeated violations of the Court's instructions. Given Liveware's apparent disinclination to settle or curtail the Delaware litigation, the Pennsylvania litigation, or the arbitration, its plea for security against potential losses incurred by decreased settlement values and costs of continued litigation is significantly undermined and its arguments on this point are wholly unpersuasive.

12