

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-2-2005

# Bd Dir Sapphire Bay v. Simpson

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3690

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Bd Dir Sapphire Bay v. Simpson" (2005). *2005 Decisions.* Paper 1258.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1258

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3690

THE BOARD OF DIRECTORS OF SAPPHIRE BAY
CONDOMINIUMS WEST

v.

GEORGE R. SIMPSON, Individually, and
d/b/a
NORTH AMERICAN ALLIANCE FOR
CORPORATE MANAGEMENT

George R. Simpson,
Appellant

Appeal from the District Court
of the Virgin Islands
(District Court Civil No. 04-cv-00062)
District Court Judge:  Honorable Thomas K. Moore

Submitted Under Third Circuit LAR 34.1(a)
April 20, 2005

Before:  NYGAARD, RENDELL and SMITH, Circuit Judges.

(Filed: May 2, 2005)

OPINION OF THE COURT

RENDELL, <u>Circuit Judge</u>.

Appellee, the Board of Directors of Sapphire Bay Condominiums West ("Board"), brought this suit against Appellant George R. Simpson, an owner of a unit in the complex managed by the Board, asserting Lanham Act violations and a number of common law trademark-related claims arising from Simpson's unauthorized use of the Board's trade name and service mark "Sapphire Bay Condominiums West." The Board alleged that due to its ownership and maintenance of this name as a mark, Simpson had no right to register the domain name <sapphirebaycondos.com> or operate a Web site at that domain claiming to be the "official" Web site of Sapphire Bay Condominiums West.

After a hearing, the District Court granted a preliminary injunction in favor of the Board, ordering Simpson, individually and doing business as the North American Alliance for Corporate Management, to cancel his registration of the domain name and refrain from using the name, or any derivative thereof, for any Web site under his ownership or substantial control. The injunction also ordered Simpson to cease and desist from using and representing that he is the owner of the names "Sapphire Bay West," "Sapphire Bay Condos West," "Sapphire Bay West Condos," "Sapphire Bay Condominiums West," "Sapphire Beach Condominiums West," "Sapphire Beach West," or any derivatives thereof. On appeal, Simpson raises a number of issues regarding the District Court's order.

The District Court had jurisdiction under 28 U.S.C. § 1331, as the Board asserted

2

federal trademark claims, and we have jurisdiction to review the grant of a preliminary injunction under 28 U.S.C. § 1292(a). We will affirm.

I.

Because we write solely for the parties, and the facts are known to them, we will discuss only those facts pertinent to this appeal. The Board has used the name "Sapphire Bay Condominiums West" as a trade name and service mark since declarations of a plan to establish the condominiums were filed with the Office of Recorder of Deeds on December 16, 1969. Simpson purchased Unit C-4 of Sapphire Bay Condominiums West in July 2003, and he currently resides there. After some disagreement between Simpson and the condominium's management regarding his desire to modify his unit's walls and windows, Simpson began a campaign of telephone calls and correspondence against the Board, individual Board members, and the Board's attorney. By April 2004, Simpson had registered, under his own name, the Internet domain name <sapphirebaycondos.com> and operated a Web site at that domain name, proclaiming it to be "The Official Website of Sapphire Bay Condominiums West - St. Thomas, V.I.," in which he published critical (and, as alleged in a separate law suit against Simpson, defamatory) statements about the Board, its members, and its attorney. After the Board sent a cease and desist letter to Simpson regarding his use of its mark in his domain name and on his Web site, Simpson changed the slogan to "The Owners Official Website For the Elimination of Dishonesty on the Board of Directors of Sapphire Bay Condominiums West, St Thomas, VI." On

3

June 2, 2004, the Board initiated the instant action, alleging willful Lanham Act violations and common law unfair competition, anti-dilution, tortious interference, trademark infringement, deceptive trade practice, and misappropriation claims.

Also in early June 2004, Simpson assigned the registration of the domain name to a business entity by the name of North American Alliance for Honest Corporate Management. On June 18, 2004, Simpson sought to register, under his own name, a number of similar trade names with the Corporations and Trademarks Division of the Office of the Lieutenant Governor of the Virgin Islands, including "Sapphire Bay West," "Sapphire Bay Condos West," "Sapphire Bay West Condos," "Sapphire Bay Condominiums West," "Sapphire Beach Condominiums West," and "Sapphire Beach West." The registrations were initially granted, but subsequently revoked when it was learned that the names were already registered to Bayside Resort, Inc.[1]

On June 28, 2004, Simpson filed a motion to dismiss for failure to state a claim upon which relief can be granted. In response, the Board filed a motion for a temporary restraining order and a preliminary injunction. The District Court conducted a hearing and, in a ruling from the bench, granted the Board's motion.

In its ruling, the District Court concluded that the Board owned the trade name and

---

[1]The record includes a letter, dated July 20, 2004, from Gilbert J. De Botton, Vice President, Bayside Resort, Inc., to Frank Berry, General Manager, Sapphire Bay Condominium West, granting permission to the Board to use and register with the Office of the Lieutenant Governor the names "Sapphire Bay West" and "Sapphire Bay Condos West."

service mark "Sapphire Bay Condominiums West," within the meaning of the Lanham Act and at common law, since December 17, 1969, and the Board had a right to bring the suit to prevent Simpson from interfering with its rights to the name. The Court also found that while North American Alliance for Honest Corporate Management was the nominal owner of the domain name at issue, Simpson retained sufficient control over it and the Web site to make him subject to the injunction.

In its analysis, the Court considered the factors necessary to grant a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm to plaintiff absent the injunction; (3) harm to the plaintiff absent the injunction outweighs the harm to the defendant of granting it; and (4) the public interest. Regarding the first factor, likelihood of success on the merits, the Court considered the following elements in evaluating the first count of the Board's Complaint, a § 43 Lanham Act claim: (a) the validity and legal protectability of the mark; (b) ownership of the mark; and (c) likelihood of confusion. Regarding the first two elements, the Court determined that the Board had established rights to the service mark by using it in connection with services offered; the name was not merely generic and, therefore, was entitled to protection under the Lanham Act; and the Board had made a clear showing of entitlement to the use of the mark. The Court then found both a likelihood of confusion and actual confusion based on: the similarity of Simpson's domain name with the Board's mark, the strength of the Board's mark as evidenced by its age and worldwide reputation, the confusion of many of the Board's

5

renters who thought that Simpson's Web site was operated by the Board, the near instant confusion among renters beginning very soon after Simpson began operation of the site, and Simpson's intent to use his site to disparage the Board.

Regarding the likelihood of success on the Board's federal dilution claim, the Court first determined that the Board's mark was famous based on a degree of inherent distinctiveness among renters and the long-standing filing of the mark with the Recorder of Deeds, the greater than 30-year use of the mark in connection with services offered, the duration and extent of advertising and publicity of the mark, the worldwide geographical trading area in which the mark was used, the use of the mark in various channels of trade, including letterhead, bills, and signs, and the degree of recognition of the mark in the relevant trading areas and channels used by the Board. The Court then determined that Simpson's use of the mark in luring individuals to his site to disparage the Board caused dilution by lessening the capacity of the mark to identify and distinguish the Board's services. Lastly, the Court concluded that Simpson's use of the mark, insofar as it was intended to harm the Board financially, was commercial speech and, therefore, not exempted from the dilution law. In sum, the Court determined that the Board had a likelihood of success on the merits on both the § 43 claim and the dilution claim.

Regarding the second and third elements for the preliminary injunction, the Court concluded that Simpson's use of the mark caused irreparable harm to the Board as a matter of law, and Simpson did not in any way establish that he would suffer any harm if

6

the injunction were issued as he would be able to continue his campaign under a different domain name. Lastly, the Court concluded that the public interest would be served by issuing an injunction as it would eliminate confusion as to the party operating the Web site. The Court memorialized the grant of the preliminary injunction, with the posting of a $1,000 bond, in an order dated August 10, 2004. It is from this order that Simpson now appeals.

## II.

We review the issuance of a preliminary injunction, including the weighing of factors in that determination, for abuse of discretion; we review factual determinations for clear error and legal conclusions are reviewed de novo. Acierno v. New Castle County, 40 F.3d 645, 652 (3d Cir. 1994). "Our scope of review is narrow because 'the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing . . . [that] is the responsibility of the district judge . . . .'" Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 101-02 (3d Cir. 1988) (citing United States Steel Corp. v. Fraternal Ass'n of Steelhaulers, 431 F.2d 1046, 1048 (3d Cir. 1970)).

## III.

Simpson, in his pro se appeal, sets forth a number of challenges, many of them facially meritless or irrelevant, to the District Court's grant of the preliminary injunction. That notwithstanding and given our narrow scope of review, we conclude, based on a

7

careful reading of the record and a fair evaluation of the District Court's analysis, that the Court did not abuse its discretion in balancing the factors and issuing the preliminary injunction.

## IV.

Accordingly, we will AFFIRM the District Court's grant of the preliminary injunction.