

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-15-2009

# ACE Amer Ins Co v. Wachovia Ins Agency

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-4236

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"ACE Amer Ins Co v. Wachovia Ins Agency" (2009). *2009 Decisions.* Paper 2021.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2021

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4236
_____

ACE AMERICAN INSURANCE COMPANY; ILLINOIS UNION INSURANCE
COMPANY; WESTCHESTER SURPLUS LINES INSURANCE COMPANY;
WESTCHESTER FIRE INSURANCE COMPANY,

Appellants

v.

WACHOVIA INSURANCE AGENCY INC., D/B/A E-RISK SERVICES;
SCOTTSDALE INSURANCE COMPANY,

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 08-cv-04369)

District Judge: Honorable Jose L. Linares
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 8, 2009
_____

Before: FUENTES, FISHER and ALDISERT, Circuit Judges
(Filed: January 15, 2009)

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

Appellants ACE American Insurance Company, Illinois Union Insurance Company, Westchester Surplus Lines Insurance Company and Westchester Fire Insurances Company (collectively "ACE") appeal from an October 17, 2008, Order of the United States District Court for the District of New Jersey granting in part and denying in part ACE's motion for a preliminary injunction against appellees Wachovia Insurance Company d/b/a "E-Risk Services" ("WIA") and Scottsdale Insurance Company ("Scottsdale"). We are satisfied that the District Court did not exceed the bounds of its discretion in (1) refusing to enjoin WIA from consummating a sale of E-Risk assets to Newco because ACE failed to prove irreparable harm, and (2) refusing to order Scottsdale to return previously disclosed information, because ACE did not prove a substantial likelihood of success on the merits. We will therefore affirm the District Court's order.

## I.

Because we write solely for the parties, because the briefing is rather elaborate and governing legal precepts rather clear, and because the parties are extremely conversant with the facts and the proceedings in the District Court, we will truncate our discussion.

On January 20, 2002, ACE entered into an exclusive agency agreement with E-Risk Services, an independent agency, whereby ACE became the sole insurer for the Exclusive Program Business. Shortly thereafter, Wachovia Corporation purchased E-Risk Services, which became part of a direct subsidiary of Wachovia, known as WIA. WIA

2

succeeded to E-Risk Services' rights and obligations under the agency agreement.

On January 1, 2006, ACE and WIA entered into an amended and restated agency agreement for the E-Risk Program. This contract, by its own terms, was to continue in force at least until December 31, 2010. The terms of this agency agreement provided that WIA could not enter into an agency agreement for E-Risk business with an entity other than ACE during the term of the agreement. It also provided that, while WIA had exclusive right to its own renewal business, both companies would compete in the market for new business. The terms of this new agreement also created a conflict between the interests of ACE and WIA. Specifically, under the new agreement, WIA was to receive no share of the underwriting profits, but instead earn a strict 30% commission on net premiums. ACE's interest, therefore, was to increase profitability, and WIA's interest was to maintain and increase premium volume. As such, their business relationship began to deteriorate.

In 2007, ACE announced that it was consolidating some of its insurance programs under the name "Diversified Risk" or "D-Risk." Some of the insurance products offered by ACE's D-Risk competed with WIA's E-Risk. Although competing for new business was permitted by the agency agreement, ACE used its leverage as E-Risk's exclusive carrier to decrease E-Risk's market share by refusing to make coverage enhancements available to WIA that ACE offered through D-Risk. Faced with this changing business environment for the agency agreement, WIA contacted Scottsdale in late 2007 to

3

investigate the possibility of changing carriers for the E-Risk program. In conducting negotiations with Scottsdale, WIA provided Scottsdale with information concerning paid claims and information concerning large losses. Although conducting such due diligence is standard industry practice when considering changing carriers, this information was not publicly available in this aggregated format.

In early 2008, WIA became interested in selling the E-Risk business assets. In May of 2008, ACE offered to purchase E-Risk from WIA. WIA declined the offer. At approximately the same time, the E-Risk management group at WIA expressed interest in acquiring the assets of E-Risk themselves, and made an offer through a new corporate entity created for that purpose – Newco. WIA provisionally accepted the offer by Newco to purchase substantially all the E-Risk assets from WIA. The transaction, however, did not include an assignment of the agency agreement to Newco. As Newco, an independent business entity, was not a party to the agency agreement between WIA and ACE, it was not bound by its exclusivity provision. Newco planned to use Scottsdale as the issuing insurer for E-Risk after the asset sale was complete. As such, the asset sale would have the effect of removing ACE as E-Risk's exclusive insurer.

During this period of preparation, WIA and Scottsdale worked together on a proposed agency agreement, mandatory filings with state insurance departments and marketing and technology issues. On August 14, 2008, Wachovia advised ACE that it had entered into a Letter of Intent to sell WIA's assets, not including the exclusive agency

4

agreement or ACE's proprietary materials, to the management-led group – Newco. Wachovia also advised ACE that the current executive management would no longer be employed by WIA following the proposed transaction. Although WIA planned to sell most of its E-Risk assets to Newco, WIA intended to satisfy its contractual obligations to ACE by servicing and writing renewal business and by not placing business with any other carrier for the duration of the amended agency agreement.

ACE filed its complaint and Motion for a temporary restraining order and a preliminary injunction in the District Court on September 2, 2008. ACE requested injunctive relief against WIA pending arbitration, alleging that WIA breached the agency agreement, violated its fiduciary duty to ACE and disclosed trade secrets to Scottsdale. ACE requested injunctive relief against Scottsdale based on theories of tortious interference with contract, misappropriation of trade secrets and false advertising. The District Court denied ACE's request to enjoin WIA's sale of assets to Newco pending arbitration, but did enjoin WIA from making any additional disclosures of confidential and proprietary information to Scottsdale. The District Court also denied ACE's request to mandatorily enjoin Scottsdale by ordering it to return all confidential and proprietary information received from WIA during the due diligence process.

We are to decide whether the District Court exceeded the permissible bounds of its discretion by denying ACE's motion to enjoin WIA from consummating the sale of E-Risk assets to Newco, and whether the District Court similarly exceeded its discretion by

denying ACE's motion to enjoin Scottsdale, ordering them to return previously received confidential information.[1]

## II.

A preliminary injunction is an extraordinary remedy that should be granted only if a party shows: (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. Kos Pharms. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). A party's failure to establish any element in its favor renders a preliminary injunction inappropriate. Nutrasweet Co. v. Vit-Mar Enters., Inc., 176 F.3d 151, 153 (3d Cir. 1999). We are satisfied that the District Court correctly held that ACE failed to demonstrate all the appropriate preliminary injunction factors.

ACE asserts that it is entitled to a preliminary injunction preventing WIA from selling substantially all of its E-Risk assets to Newco during the pendency of their arbitration based on breaches of the agency agreement and violations of fiduciary duty. Specifically, ACE asserts that WIA breached the agency agreement by assisting Scottsdale in conducting the E-Risk business; disclosing confidential documents, confidential information and trade secrets to Scottsdale; preventing ACE from accessing

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). We review a denial of a preliminary injunction for an "abuse of discretion, a clear error of law, or a clear mistake on the facts." Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999).

required information on policies; and arranging to transfer the E-Risk business and associated confidential data and trade secrets to a new entity. ACE alleges that these actions also violated WIA's fiduciary duty.

The District Court held that ACE demonstrated the requisite "reasonable probability" of success on the merits sufficient to support injunctive relief with respect to the breach of the confidentiality portions of the agency agreement but not to the exclusivity portions. The District Court also found a "reasonable probability" of success with respect to breach of fiduciary duty for disclosing to Scottsdale certain aggregated financial information. The District Court, however, held that regardless of its reasonable probability for success on the merits, ACE was not entitled to relief because it did not prove irreparable harm absent an injunction, and the other factors did not decisively fall in its favor. We agree.

In order to demonstrate irreparable harm, ACE must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). In other words, a preliminary injunction must be the only way of protecting the plaintiff from harm and may not be granted to relieve purely economic harm. Id.; Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will." Kos Pharms., 369 F.3d at 726 (quoting Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800,

7

805 (3d Cir. 1998)).

ACE asserts that the proposed asset sale will irreparably harm it by causing a loss of its goodwill and reputation as a result of losing its status as the exclusive underwriter of the E-Risk business. Although in certain situations a loss of goodwill may be irreparable, that is not the case here. ACE and WIA have been doing business together under an agency agreement since 2002. Where there exists a lengthy history of company relations, loss of goodwill and reputation in the industry can be ascertained. See Instant Air Freight Co., 882 F.2d at 798-802 (holding that money damages for breach of contract, including loss of goodwill, would be provable because of lengthy relationship of the two companies and previous performance under the contract). Here, the parties have been operating under an exclusive agency agreement since 2002. Given this history, any loss in business, market share or goodwill should be reducible to a monetary figure.

Nor does the balance of the hardships or public policy fall in ACE's favor. First, the agency agreement specifically provides for a possible asset sale, and specifies that such a sale will be a terminating event for the agreement. Second, if WIA is enjoined from selling the E-Risk assets pending the arbitration, this will restrain the asset sale transaction for weeks, if not months, while ACE uses its leverage as E-Risk's exclusive carrier to decrease E-Risk's market share. This will result in a reduction of the possible purchase price, and may deny WIA the opportunity to complete the sale altogether. As such, the balance of the hardships and public policy do not favor ACE.

8

A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction. Instant Air Freight, 882 F.2d at 800 (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982)). Accordingly, the District Court did not exceed the bounds of its discretion in refusing to enjoin WIA's sale of the E-Risk assets to Newco.

III.

ACE also asserts that it is entitled to an injunction ordering Scottsdale to return all information that WIA provided to it in violation of the agency agreement, based on trade secret misappropriation, tortious interference with contract and false advertising. ACE argues that the District Court erroneously believed that it lacked the authority to order the return and non-use of confidential information and trade secrets.

ACE's arguments are unavailing. The District Court held that ACE did not meet its burden in demonstrating a likelihood of success on the merits and did not reach the remainder of the factors for preliminary injunctive relief. First, ACE does not challenge the District Court's findings that it failed to establish a likelihood of success on the merits of any of its three claims for relief against Scottsdale. Nevertheless, even if ACE could prove substantial likelihood of success on the merits, we are satisfied that future irreparable harm would not occur absent an injunction because the information provided to Scottsdale has already been used for its intended purpose and Scottsdale is contractually forbidden from using that information for any other purpose or from

9

disclosing that information to any other party. Although disclosure of confidential information or trade secrets may constitute irreparable harm, the loss of the secret or confidential information must not have already occurred: once a secret is revealed, there is nothing for an injunction to protect. Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 92 (3d Cir. 1992). Although Campbell Soup concerned the disclosure of trade secrets in a publicly-filed patent application, rather than as here, where the trade secrets have not been publicly disseminated, Scottsdale has already used the information for its desired purpose, to make the business decision based upon that information. Now that the information has been used, and Scottsdale is contractually forbidden from further using or disclosing the information, there is nothing to enjoin.

Because ACE failed to show that it had a substantial likelihood of success on the merits and that it would suffer irreparable harm, the District Court did not exceed the bounds of its discretion in refusing to order Scottsdale to return the information received from WIA.

******

We have considered all contentions raised by the parties and conclude that no further discussion is necessary.

The judgment of the District Court will be affirmed.

10