**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2432
_____

CLIFFORD BOYNES; CHRIS CHRISTIAN; MARGARET
THOMPSON; DELIA ALMESTICA; CARLOS CHRIS-
TIAN; ANNA REXACH-CONSTANTINE; MERVYN
CONSTANTINE; NEAL DAVIS; EDNA SANTIAGO;
GUIDRYCIA WELLS; O'SHAY WELLS; AARON G.
MAYNARD; VERNE MCSWEEN; ROCHELLE GOMEZ;
MYRNA MATHURIN; JOAN MATHURIN; WARRING-
TON CHAPMAN; ANN MARIE JOHN-BAPTISTE; LEOBA
JOHN-BAPTISTE-PELLE; J.M.M., by and through his
mother Anna Rexach-Constantine; V.M., by and through his
mother Anna Rexach-Constantine; Z.R.C., by and through his
mother Anna Rexach-Constantine; M.M., by and through his
mother Anna Rexach-Constantine; O.N., by and through his
mother Guidrycia Wells

v.

LIMETREE BAY VENTURES LLC; ARC LIGHT CAPI-
TAL PARTNERS; FREEPOINT COMMODITIES; EIG
GLOBAL ENERGY PARTNERS; BP PRODUCTS NORTH
AMERICA INC.; LIMETREE BAY TERMINALS LLC,
d/b/a Ocean Point Terminals; LIMETREE BAY HOLDINGS
LLC; LIMETREE BAY PREFERRED HOLDINGS LLC;

ARCLIGHT AIV, L.P.; ARCLIGHT ENERGY PARTNER
FUND VI L.P.; UNIVERSAL PLANT SERVICES VI LLC;
EXCEL CONSTRUCTION MAINTENANCE VI INC.;
ELITE TURNAROUND SPECIALISTS LTD.; PINNACLE
SERVICES LLC; VERSA INTEGRITY GROUP INC.;
NATIONAL INDUSTRIES SERVICES LLC;
JOHN DOES 1–100

_____

HELEN SHIRLEY; ANISHA HENDRICKS; CRISTEL
RODRIGUEZ; JOSIE BARNES; ARLEEN MILLER;
ROSALBA ESTEVEZ; ISIDORE JULES; JOHN SONSON;
VIRGINIE GEORGE; and all others similarly situated

v.

LIMETREE BAY VENTURES LLC; LIMETREE BAY
TERMINALS LLC; LIMETREE BAY REFINING LLC

_____

FRANCIS CHARLES; THERESA J. CHARLES

v.

LIMETREE BAY REFINING LLC; LIMETREE BAY TER-
MINALS LLC; LIMETREE BAY VENTURES LLC; ARC
LIGHT CAPITAL PARTNERS LLC; FREEPOINT

2

COMMODITIES; EIG GLOBAL ENERGY PARTNERS;
ARCLIGHT ENERGY PARTNER FUND VI L.P.;
ARCLIGHT AIV, L.P.; LIMETREE BAY HOLDINGS LLC;
LIMETREE BAY PREFERRED HOLDINGS LLC

————————————

BEECHER COTTON; PAMELA L. COLON; SIRDINA
ISAAC-JOSEPH; SYLVIA BROWNE; JEAN-MARIE
ALVINA ILARRAZA; ESTHER CLIFFORD; RYAN
ALLEYNE; AGNES AUGUSTUS; CESARINA MIRANDA

v.

LIMETREE BAY VENTURES LLC; LIMETREE BAY
REFINING LLC; LIMETREE BAY TERMINALS LLC,
d/b/a Ocean Point Terminals; ARC LIGHT CAPITAL PART-
NERS; FREEPOINT COMMODITIES; EIG GLOBAL
ENERGY PARTNERS; BP PRODUCTS NORTH AMER-
ICA INC.; JOHN DOES 1–10; LIMETREE BAY HOLD-
INGS LLC; LBR LIQUIDATING TRUST; M. DAVID
SUNN; UNIVERSAL PLANT SERVICES VI, LLC; EXCEL
CONSTRUCTION MAINTENANCE VI INC.; ELITE
TURNAROUND SPECIALISTS LTD.; PINNACLE SER-
VICES LLC; VERSA INTEGRITY GROUP INC.;
NATIONAL INDUSTRIES SERVICES LLC

3

_____

LIMETREE BAY TERMINALS LLC,

                                     Appellant

_____

On Appeal from the District Court
for the Virgin Islands
(D.C. Nos. 1:21-cv-00253; 1:21-cv-00259;
1:21-cv-00260; 1:21-cv-00261)
District Judge: Honorable Wilma A. Lewis

_____

Argued: May 16, 2024

Before: JORDAN, SHWARTZ, and BIBAS, *Circuit Judges*

(Filed: August 5, 2024)

Carl A. Beckstedt, III
BECKSTEDT & KUCZYNSKI
2162 Church Street
Christiansted, VI 00820

Kevin J. Bruno
Jane Thomas
BLANK ROME
1271 Avenue of the Americas
New York, NY 10020

Melanie S. Carter
BLANK ROME

130 North 18th Street
One Logan Square
Philadelphia, PA 19103

Stephen M. Orlofsky            [ARGUED]
BLANK ROME
300 Carnegie Center, Suite 220
Princeton, NJ 08540
    *Counsel for Appellant*

Carly Jonakin
Kerry J. Miller
C. Hogan Paschal
Rebekka C. Veith
FISHMAN HAYGOOD
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
    *Counsel for Appellee Clifford Boynes*

John K. Dema
LAW OFFICES OF JOHN K. DEMA
1236 Strand Street, Suite 103
Christiansted, VI 00820
    *Counsel for Appellee Francis Charles*

Daniel H. Charest            [ARGUED]
BURNS CHAREST
900 Jackson Street, Suite 500
Dallas, TX 75202
    *Counsel for Appellees Helen Shirley & Beecher Cotton*

Shanon J. Carson
Yechiel M. Twersky
BERGER MONTAGUE
1818 Market Street, Suite 3600
Philadelphia, PA 19103

Lee J. Rohn
Rhea R. Lawrence
LEE J. ROHN & ASSOCIATES
1108 King Street, Suite 3
Christiansted, VI 00820
    *Counsel for Appellee Beecher Cotton*

———————————

OPINION OF THE COURT
———————————

**BIBAS**, *Circuit Judge*.

Extraordinary harm warrants extraordinary relief. Limetree Bay Terminals and Limetree Bay Refining reopened an oil refinery in St. Croix, Virgin Islands. The refinery spewed oil onto nearby properties, contaminating water supplies. When nearby residents sued, the District Court granted them a preliminary injunction, requiring Terminals and Refining to give out bottled water to affected residents who could not afford to buy it. In return, those residents collectively had to post a $50,000 bond. Because the court properly ordered the bottled-water program and set a bond amount that balanced the cost to Terminals against what the residents could afford, we will affirm.

6

## I. THE REFINERY SPEWED OIL, SO THE DISTRICT COURT ORDERED THE COMPANIES TO GIVE RESIDENTS BOTTLED WATER

After a St. Croix oil refinery got fined millions of dollars for polluting the environment, it closed for about a decade. During that time, Terminals bought and then sold the refinery to its sister company, Refining. Terminals kept doing maintenance and repair work on the refinery and held onto its operating permit. In early 2021, the refinery reopened. Only three days later, it released "a mist with heavy oil in it" that settled on nearby properties. App. 11. A few months later, it again spewed a heavy-oil mist and spat out flames dozens of feet high. The EPA ordered Terminals and Refining to stop running the refinery, so they did.

Yet the damage was done. Some of the oil had gotten into cisterns, which, in the Virgin Islands, "are a way of life." App. 1492. Cisterns can hold more than half a million gallons, collecting rainwater runoff from roofs. Strainers in the pipes filter out large debris but cannot keep out oil. Because the islands have no reliable public water supply, many residents rely on these tanks for cooking, bathing, and drinking water.

So the companies tried to fix their mess. First, they sent teams to identify and clean contaminated cisterns. Then they hired a company to inspect residents' properties and told it to pay residents if it found even a speck of oil.

Still, not all residents had access to clean water. They brought these class-action suits against the companies, seeking damages plus injunctive relief. For about a year, the court put those suits on hold, while a mediation and bankruptcy plan

7

required the companies to give out free bottled water. When that plan ended, the residents sought the preliminary injunction, requiring Terminals and Refining to keep giving residents bottled water.

After a hearing, the District Court granted that injunction. First, it found that even though the companies' contracts listed Refining as the refinery's sole operator, the refinery's federal operating permit listed both companies. So not only Refining, but also "Terminals had a duty to ensure that the refinery, as a whole, complied with the Clean Air Act and the requirements imposed by the [federal operating] [p]ermit." App. 23. Based on testimony from residents and experts, it also found that Terminals had likely violated that duty by contaminating surrounding properties with oil. Because oil does not break down, it reasoned, the oil was still there. And because oil-contaminated water threatens human health, the court found a present and continuing harm to the residents. Since some residents could not afford to buy clean water, it concluded that they would suffer irreparable harm and should get injunctive relief.

After another hearing, the District Court set the scope of the bottled-water program. Relying on data and expert testimony, the court limited relief to those living in certain neighborhoods who get need-based government financial assistance. Rather than waive an injunction bond or set it at just $250, the court required the residents collectively to post $50,000 for the first thousand participating households, plus $50 for each household after that. Though the court found the bond amount "certainly minimal relative to the anticipated costs associated with the water program," it also "believe[d] it … more appropriate

8

than an outright waiver of the bond." App. 110. The residents posted that bond; Terminals now appeals.

We have jurisdiction over this interlocutory appeal under 28 U.S.C. § 1292(a)(1). We review the District Court's factual findings for clear error, its legal conclusions de novo, and its ultimate grant of a preliminary injunction for abuse of discretion. *Del. Strong Fams. v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015).

## II. THE DISTRICT COURT PROPERLY ORDERED THE BOTTLED-WATER PROGRAM

A court weighing a preliminary injunction must consider four guideposts: (1) the movants' likelihood of success on the merits; (2) the risk that the movants will suffer irreparable harm absent preliminary relief; (3) the balance of equities; and (4) the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). The first two factors are the "most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). If both are present, the court then considers the others. *Id.* at 435.

"[A] preliminary injunction is an extraordinary and drastic remedy," so the residents bear the burden of making "a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (internal quotation marks and emphasis omitted). Because they have made that showing, the District Court properly exercised its discretion to grant preliminary relief.

### A. The District Court rightly found that the residents are likely to succeed

On the first factor, the residents had to show they are reasonably likely to win this lawsuit. *Reilly v. City of Harrisburg*,

9

858 F.3d 173, 176 (3d Cir. 2017). Terminals argues that they cannot because they sued the wrong company. Only Refining operated the refinery under the companies' contracts, Terminals says, so only Refining had a duty to ensure compliance with the operating permit.

Not so. True, Terminals and Refining contracted to oversee different parts of the operation. But Terminals never amended its operating permit to incorporate those agreements. And though Refining had the option to become sole holder of the permit, it did not. Instead, it became a co-permittee. As co-permittees, both companies had to "comply with all conditions of th[e] operating permit." App. 3554. Terminals could not contract away that federal duty.

Even if Terminals could have, it did not. Though its contract barred it from "unduly interfer[ing]" with operating the refinery, leaving those duties to Refining, it was careful not "to negate or obviate any condition or use restriction set forth in any permit." App. 5046, 5050. So if the refinery violated the federal operating permit, as suggested by the weight of the evidence, both Terminals and Refining are on the hook.

### B. The District Court properly found irreparable harm absent the bottled-water program

The residents also needed to show that they "specifically and personally risk[ed] irreparable harm." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000). For harm to be irreparable, it "cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Nor can it be speculative. *See Acierno v. New Castle County*, 40 F.3d 645,

10

655 (3d Cir. 1994); *see also Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, Nos. 23-1633, 23-1634 & 23-1641, 2024 WL 3406290, at *7 (3d Cir. July 15, 2024).

Still, courts typically grant preliminary injunctions based on relaxed procedures and incomplete evidence. *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004). Courts can thus grant relief for many plaintiffs based on the testimony of a few "so long as the plaintiffs lay an adequate foundation from which one could draw inferences that the testifying plaintiffs are similarly situated" to all the other plaintiffs. *Adams*, 204 F.3d at 487.

Though only a few residents testified here, the plaintiffs laid enough of a foundation for the District Court to find that many residents are suffering irreparable harm. Terminals concedes much of that foundation. Its own employees confirmed that the refinery had sprayed oil. Its own witnesses admitted finding oil on surrounding properties, a majority of which were affected. Both experts and lay witnesses testified that oil contamination persists unless cleaned up, a fact that Terminals "failed to dispel." App. 41. Some residents who could not afford clean water resorted to using contaminated water, threatening their health. *See, e.g.*, Safe Drinking Water Act Amendments of 1996, Pub. L. No. 104-182, 110 Stat. 1613, 1614 ("[S]afe drinking water is essential to the protection of human health …."). And as Terminals's own lawyer conceded at oral argument, the harm suffered by residents forced to use oil-contaminated water is not compensable by money damages.

Building on this solid foundation, the District Court tailored relief to ensure that only those irreparably harmed by the oil

11

contamination would benefit. It limited bottled water to those within a defined area who could not afford to buy water, based on expert reports, models, and extensive data. That thoughtful analysis was enough to confirm irreparable harm.

### C. The District Court got the remaining factors right too

Nor did the court err in analyzing the rest of the factors. Though Terminals must bear the substantial cost of giving out bottled water, that cost pales in comparison with the health costs of drinking, cooking with, or bathing in oil-contaminated water. Plus, the injunction promotes the public's strong interest in access to safe drinking water. So the balance of the equities and the public interest both favor the residents.

With all four factors weighing in favor of the preliminary injunction, the District Court properly awarded it even before certifying the class. As Terminals's lawyer admitted at oral argument, we have never held that a court must certify a class before granting a preliminary injunction. *Adams*, 204 F.3d at 479–80, 490.

### III. THE DISTRICT COURT PROPERLY REQUIRED ONLY A MODEST BOND

When granting a preliminary injunction, a court must also impose a bond "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). We have held that posting a bond is "almost mandatory"; any exceptions are "rare." *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988).

Injunction bonds serve two purposes. First, they provide and cap a fund to compensate defendants who were mistakenly enjoined. *Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 239–40 (3d Cir. 2003). Second, they force plaintiffs to "think carefully" before accepting interlocutory relief. *Instant Air Freight*, 882 F.2d at 804 (internal quotation marks omitted).

As a rule, injunction bonds should be large enough to serve both purposes. But sometimes, that is not possible. When a defendant has more money than the plaintiffs, as here, it may not be possible to set a bond high enough to fully compensate the defendant but low enough that the plaintiffs can pay it. In such cases, we rely on the District Court to weigh these competing aims. So we review the bond amount for abuse of discretion. *Sprint Commc'ns*, 335 F.3d at 239.

Terminals complains that the $50,000 bond amount is "minimal" and cannot "adequately compensate Terminals for the costs and damages sustained in running the [bottled-water] Program." Appellant's Br. 55 (quoting App. 110), 57. Indeed, the bond amount is much lower than the program's cost. Yet that does not make it unlawful. We hold that "an amount that the court *considers proper* to pay the costs and damages sustained by any" defendant may be less than the full amount needed to make that defendant whole. Fed. R. Civ. P. 65(c) (emphasis added). But first, the court must specifically find that the plaintiffs cannot post the full amount and must carefully balance their ability to pay along with the hardships that each side faces.

13

The District Court did that here. It made "specific findings" about how much money the residents could post and "the relative hardships to each party." *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996). It rejected the residents' request to waive the bond or require only a nominal $250 bond. And it found that a $50,000 bond would make them "think carefully" before accepting preliminary relief. App. 110. Though the bond amount was much smaller than the cost of giving out bottled water, that does not make the bond amount inadequate. The court prudently balanced the residents' ability to pay against Terminals's ability to recover something if it eventually won. Plus, it found that the public interest overwhelmingly favors the residents. The court "dr[ew] narrowly" its exception to the norm of full compensation. *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 211 n.32 (3d Cir. 1990). Its conclusion was sound.

\* \* \* \* \*

Preliminary injunctions are proper only in extraordinary situations, like this one. The court properly ordered Terminals and Refining to give out bottled water to residents in polluted areas who are too poor to buy it for themselves. Given the residents' poverty, the court properly imposed an injunction bond that they could pay, even though it would not be nearly enough to cover the full cost of the bottled-water program. Because the District Court properly applied the law and thoughtfully exercised its discretion, we will affirm its preliminary injunction and $50,000 bond.

14